Sherman KEYSOR, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2013-SC-000531-DG

Supreme Court of Kentucky.

RENDERED: MAY 5, 2016

Counsel for Appellant: Erin Hoffman Yang, Assistant Public Advocate, Department of Public Advocacy

Counsel for Appellee: Andy Beshear, Attorney General of Kentucky, William Bryan Jones, Leilani K.M. Martin, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General

## OPINION OF THE COURT BY JUSTICE VENTERS

Appellant Sherman Keysor entered a conditional *Alford* plea to two counts of first-degree sexual abuse, preserving his right to appeal the trial court's refusal to suppress statements he made to police during a custodial interrogation in the absence of his appointed counsel. Appellant argues that the incriminating statements were obtained in violation of his right to counsel under the Sixth Amendment and under Section 11 of the Kentucky Constitution. Initially, based upon prevailing law, the trial court granted Appellant's motion and suppressed the statements. The trial court, however, reversed itself when United States Supreme Court rendered its opinion in *Montejo v. Louisiana,* 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), which overturned long-standing Sixth Amendment precedent. The Court of Appeals, predicting that this Court would apply the *Montejo* rationale in the context of state right-to-counsel law, affirmed the trial court's decision. We granted discretionary review to consider, within the factual parameters of this case, *Montejo*'s impact upon Kentucky's right-to-counsel jurisprudence.

## I. FACTUAL AND PROCEDURAL HISTORY

Appellant was arrested in Graves County, Kentucky, and charged with two counts of first degree sexual abuse. He was arraigned in the Graves County District Court. Upon his application as an indigent, counsel was appointed to represent him on those charges. After a preliminary hearing, Appellant was bound over to the grand jury. Unable to post bond, he remained in jail and was indicted two months later. He was formally arraigned; his court-appointed attorney entered his appearance in the Graves Circuit Court; and

a reciprocal discovery order was entered. Appellant remained in jail awaiting trial.

In the meantime, Graves County detectives investigating the case had informed police officials in neighboring Marshall County that Appellant's putative victim also claimed that Appellant had sexually abused her in Marshall County. Even though Appellant had been arraigned and was represented by counsel on the pending Graves County charges, police detectives from Marshall County, along with a state social worker, travelled to the Graves County jail to interrogate Appellant about the Marshall County allegations. Appellant's counsel in the Graves County case was not made aware of this interrogation.

■ At the outset of their interrogation, the officers advised Appellant of his *Miranda* rights and informed him that they were there only to discuss the Marshall County allegations. With that understanding and without contacting or consulting his attorney, Appellant signed a waiver of his right to remain silent and voluntarily agreed to talk to Marshall County authorities. Despite their stated purpose to collect information only about the Marshall County allegations, the interrogation expanded to include questions pertinent to the pending Graves County charges. Appellant denied the allegations. When he said that a polygraph would confirm his innocence, the interrogating officers asked him to submit to a polygraph examination, and he did so. Eight days later, a polygraph examination was arranged by Marshall County police authorities. Appellant again waived his right to remain silent and submitted to the examination. Again, his appointed counsel was not informed of this procedure. During the interview with police that immediately followed the polygraph examination, Appellant made incriminating statements which the Commonwealth then decided to use in the pending Graves County prosecution.[1]

After learning of these interrogations, Appellant's counsel moved to suppress the use of the statements in the trial of the Graves County charges. We emphasize that Appellant's suppression motion addressed only the admissibility of his statements in the trial of the Graves County charges, and this appeal is focused accordingly upon the use of his custodial statements as evidence in a trial of the Graves County charges for which he had already been indicted and upon which he was represented by counsel when the interrogation occurred. The admissibility of these statements in connection with the Marshall County charges is not before us. Obviously, different considerations would apply to that issue.

In support of his motion to suppress, Appellant argued that the use of the statements in the upcoming Graves County trial would violate his right to counsel as explained in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), and as thereafter adopted by this Court in *Linehan v. Commonwealth*, 878 S.W.2d 8 (Ky.1994). In *Jackson*, the Supreme Court said: "We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 106 S.Ct. 1404. *Line-*

---

1. Because of the conditional guilty plea, no trial occurred on the Graves County charges so there is no issue about improper references to the polygraph in the presence of a jury, which might otherwise be problematic. References to incriminating statements voluntarily made during the course of a polygraph examination may be admitted under certain circumstances. *Commonwealth v. Hall*, 14 S.W.3d 30, 31–32 (Ky.App.1999).

*han* adopted the *Jackson* analysis verbatim.

Based upon *Jackson* and *Linehan,* the trial court granted Appellant's motion to suppress the use of the statements in the Graves County trial. Immediately thereafter, the Commonwealth requested a reconsideration of the issue because just days before the trial court's ruling, the United States Supreme Court decided *Montejo v. Louisiana,* 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), which expressly overruled *Jackson.* The Supreme Court decided in *Montejo* that a defendant, charged with murder and represented by counsel, may nevertheless be approached by police for interrogation without the knowledge or presence of counsel, and with the defendant's knowing, voluntary, and informed consent, any resulting statements may be admitted against him at trial despite counsel's exclusion from the interrogation.

Advised of *Montejo,* the trial court reversed itself and denied Appellant's motion

to suppress, reasoning that since *Linehan* was based upon *Jackson,* and *Jackson* was then overruled by *Montejo, Linehan,* too, was no longer reliable authority. Even though *Linehan* remained the controlling authority of this Court, the trial court speculated that if the opportunity arose to reconsider *Linehan,* this Court would follow *Montejo* for purposes of Section 11 of the Kentucky Constitution. The trial court expressly based it assumption on expressions of this Court that the constitutional right to counsel under Section 11 provided no greater protections than the Sixth Amendment of the United States Constitution.[2]

Thereafter, Appellant entered a conditional *Alford* plea to two counts of sexual abuse in the first degree, and preserved the suppression issue for appeal. The Court of Appeals affirmed, echoing the trial court's prediction that in light of *Montejo* we would overrule *Linehan.* We granted discretionary review to examine our analysis in *Linehan* and clarify this important constitutional issue.[3]

**2.** "[T]he right of counsel guaranteed by Section 11 of the Kentucky Constitution is no greater than the right of counsel guaranteed by the Sixth Amendment of the United States Constitution . . . ." *Cain v. Abramson,* 220 S.W.3d 276, 280–281 (Ky.2007) (quoting *Cane v. Commonwealth,* 556 S.W.2d 902, 906 (Ky. App.1977)).

**3.** At the outset of this analysis, we address what might appear to be a preservation issue relating to the Kentucky Constitution, although the question of preservation has not been raised. *Linehan's* Sixth Amendment analysis was unquestionably the controlling authority in Kentucky applicable to these facts. *Linehan* resolved the issue exclusively under the Sixth Amendment analysis provided by the Supreme Court in *Jackson.* Section 11 was not discussed in *Linehan.* Appellant filed his suppression motion prior to *Montejo* while *Jackson* was the reigning authority, and therefore had no reason to specifically assert an argument that Section 11, independently of the Sixth Amendment, compelled the sup-

pression of his uncounseled statements. After his initial success in the trial court, however, *Montejo* suddenly undercut the Sixth Amendment rationale for suppression. During the trial court's reconsideration of the issue, and throughout the appellate process, Appellant has maintained the position that his constitutional right to counsel was abridged by the evidentiary use of his uncounseled, incriminating statements. Both the trial court and the Court of Appeals addressed the issue by predicting that this Court would overrule *Linehan* and adopt the *Montejo* rule. Implicit in the reasoning of the lower courts was their recognition that Appellant sought an interpretation of Section 11 to cover the Sixth Amendment void left open by the overruling of *Jackson,* since that was the only way for the *Linehan* rule to survive *Montejo.* Both of the lower courts squarely considered whether this Court would construe Section 11 as consistent with *Jackson,* and thus retain the *Linehan* rule, or would apply the rationale of *Montejo* to Section 11, and thus overrule *Linehan.* We granted discretionary review with

## II. ANALYSIS

Appellant's case straddles a dramatic shift in the United States Supreme Court's perception of the Sixth Amendment right to counsel. As far back as 1932, federal courts recognized in connection with the right to counsel that "the most critical period" for defendants during criminal proceedings is "from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important." *Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

In *Massiah v. United States,* the Supreme Court reaffirmed the principle that post-indictment interrogations of an accused by police officers, or their agents, "without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime." 377 U.S. 201, 205, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (citation omitted).

In *Jackson,* the Supreme Court merged the Fifth Amendment's right-to-counsel perspective as expressed in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), with Sixth Amendment right-to-counsel principles. *Edwards* held that an accused person who had invoked his right to counsel could not be subjected to further interrogation by police "until counsel has been made available to him" or "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–485, 101 S.Ct. 1880. Thus, per *Edwards,* under the Fifth Amendment, police could not initiate a post-indictment interrogation of a defendant who had requested counsel or was represented by counsel. Statements

that understanding, and the Commonwealth does not challenge the preservation of Appel-

obtained under those circumstances would be suppressed.

The *Jackson* Court noted that the same reasoning applied with even greater force when analyzed under Sixth Amendment right-to-counsel analysis.

Indeed, after a formal accusation has been made—and a person who had previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment—the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation.

*Id.* at 632, 106 S.Ct. 1404.

Succinctly stated, the rule from *Jackson* is that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Jackson,* 475 U.S. at 636, 106 S.Ct. 1404. It is worth noting that the rule articulated in *Jackson* was built upon established right to counsel principles; *Jackson* did not overrule or abrogate any precedent. The Supreme Court later restated the *Jackson* rule in *McNeil v. Wisconsin:*

Our holding in *Michigan v. Jackson* ... [is] that after the Sixth Amendment right to counsel attaches and is invoked, any statements obtained from the accused during subsequent police-initiated custodial questioning regarding the charge at issue (even if the accused purports to waive his rights) are inadmissible.

lant's Section 11 argument.

501 U.S. 171, 179, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

Against that backdrop, this Court decided *Linehan v. Commonwealth,* 878 S.W.2d 8 (Ky.1994). Addressing the propriety of the police interrogation of the defendant, we held: "Counsel was appointed to represent Linehan when indicted and arraigned on the [the initial charges], and *thereafter he could not be subjected to police-initiated interrogation regarding any evidence incriminating him on the charges for which he had counsel unless his counsel was present." Id.* at 10 (emphasis added).

The facts of *Linehan* are similar in every relevant aspect to the case at bar. In each case, a criminal defendant faced charges from two separate criminal incidents involving the same victim; in each case, the defendant was appointed counsel at his arraignment on the initial charges; in each case, after appointment of counsel on the initial charge, police initiated contact with the accused to investigate the subsequent allegations; and, in each case, the prosecution sought to use the statements in the trial of the initial crimes. Linehan was initially charged with burglarizing the home of his estranged wife and forcing her to engage in sexual acts. At his arraignment, defense counsel was appointed. It was later alleged that he assaulted his wife a second time, forcing her into his car and driving to a remote location where he again raped her. He was quickly apprehended by police and, after waiving his *Miranda* rights, he responded to the police interrogation with self-incriminating statement relating to the earlier charges. *Id.* at 9.

All of Linehan's charges were consolidated for trial and the question presented was whether the incriminating statements obtained during the investigation of the second crime (but after he had been indicted and appointed counsel on the initial charges) could be used to convict him of the initial charges. We concluded Linehan's waiver of rights was effective to allow the use of his statements in the trial of the subsequent charges, but the waiver was not valid as to the use of the statements in a trial of the initial offenses for which he was formally charged and represented by counsel. The use of the statements in a joint trial that included the initial offenses would violate Linehan's right to counsel.

> We find no constitutional right, federal or state, precluding police-initiated custodial interrogation on new charges, once *Miranda* warnings have been given and a voluntary waiver obtained, and no reason to imply such a right in order to protect existing rights, *so long as the evidence thus obtained is not used to incriminate the accused on old charges for which he already has counsel. The accused is adequately protected by suppressing use of the statement in any trial involving the old charges*[.]

*Id.* at 11 (emphasis added). Thus, *Linehan* holds that once a defendant has been formally charged and is represented by counsel, the police may not initiate an interrogation of the defendant about that particular case without the knowledge and approval of counsel, but he may be approached and interrogated on other matters. Our decision in *Linehan* was entirely consistent with our precedent; no previous decisions were overruled or abrogated by the *Linehan* decision.

*Linehan* reflected not only our concurrence with Supreme Court's reasoning in *Jackson,* but also our concurrence with the constitutional analysis of its preceding authorities and of our own precedent. However, in *Montejo,* a sharply-divided United States Supreme Court overruled *Jackson.* Writing for the majority, Justice Scalia undertook an appraisement of the social

utility of the *Jackson* rule. By his reckoning, *Jackson* was wrong because the constitutional protection it afforded did not "pay its way" when its "marginal benefits" were "weighed against its substantial costs to the truth-seeking process and the criminal justice system." *Id.* at 797, 129 S.Ct. 2079. Justice Scalia reasoned that the *Jackson* rule existed only to prevent police from "badgering defendants into changing their minds about their rights." *Id.* at 789, 129 S.Ct. 2079. He concluded that *Jackson* was unnecessary to achieve that purpose because the problem was otherwise controlled by "three layers of prophylaxis." [4]

*Montejo's* dissenting Justices robustly challenged Justice Scalia's disdain for *Jackson:*

> The majority insists that protection from police badgering is the only purpose the *Jackson* rule can plausibly serve. After all, it asks, from what other evil would the rule guard? There are two obvious answers. First, most narrowly, it protects the defendant from any police-initiated interrogation without notice to his counsel, not just from "badgering" which is not necessarily a part of police questioning. Second, and of prime importance, it assures that any waiver of counsel will be valid. The assistance offered by counsel protects a defendant from surrendering his rights with an insufficient appreciation of what those rights are and how the decision to respond to interrogation might advance or compromise his exercise of those rights throughout the course of criminal proceedings. A lawyer can provide her client with advice regarding the legal and practical options available to him; the potential consequences, both good and bad, of choosing to discuss his case with police; the likely effect of such a conversation on the resolution of the charges against him; and an informed assessment of the best course of action under the circumstances. Such assistance goes far beyond mere protection against police badgering.

*Montejo,* 556 U.S. at 805, n. 2, 129 S.Ct. 2079 (2009) (Stevens, J., dissenting) (citation omitted). The dissent also disputed the validity of the majority's cost-benefit analysis, noting that several law enforcement amici even conceded that the application of *Jackson* "rarely impedes prosecution." *Id.* at 807 n. 3, 129 S.Ct. 2079.

We share that distaste for interpreting the meaning of a constitutional right by assaying its value on the current ledger of social utility. It could fairly be argued that every constitutional protection provided to those the government would imprison imposes "substantial costs" upon the criminal justice system; that is so by design. Constitutional protections were put in place by the framers of the state and federal constitutions to hinder oppressive impulses by retarding the government's ability to incarcerate suspected offenders. Fairness, not expedience, is the touchstone of our criminal justice system. Few if any constitutional liberties will "pay their way" in terms of prosecutorial efficiency; they

---

4. "Even without *Jackson,* few badgering-induced waivers, if any, would be admitted at trial because the Court has taken substantial other, overlapping measures to exclude them. Under *Miranda v. Arizona,* any suspect subject to custodial interrogation must be advised of his right to have a lawyer present. 384 U.S. [436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)]. Under *Edwards,* once such a defendant "has invoked his [*Miranda*] right," interrogation must stop. 451 U.S. at 484, 101 S.Ct. 1880. And under *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 [1990], no subsequent interrogation may take place until counsel is present. *Id.* at 153, 111 S.Ct. 486. These three layers of prophylaxis are sufficient." *Montejo,* 556 U.S. at 779, 129 S.Ct. 2079 (citations omitted).

exist to make criminal prosecutions fair and just, not cheap and easy.

We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through skillful investigation.

*Escobedo v. Illinois,* 378 U.S. 478, 488–489, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) (citations omitted).

· Although our embrace of *Jackson* in *Linehan* did not explicitly reference Section 11 of the Kentucky Constitution, we implicitly found *Jackson* to be in accord with the right to counsel under Section 11 and we expressly do so now. We have often noted that the right to counsel contained in Section 11 is consistent with the correlative right found in the Sixth Amendment. Although not without exception, we have on a few occasions stated that the right of counsel guaranteed by Section 11 of the Kentucky Constitution "is no greater than the right of counsel guaranteed by the Sixth Amendment of the United States Constitution." *Allen v. Commonwealth,* 410 S.W.3d 125, 133 n. 17 (Ky.2013) (citing *Cain v. Abramson,* 220 S.W.3d 276, 280–281 (Ky.2007) and *Cane v. Commonwealth,* 556 S.W.2d 902, 906 (Ky.App.1977)).[5] This expression, however, must be regarded as simply an observation of the parallel aspects of dual sovereignty rather than an immutable rule of law. Our interpretation of the state constitution is informed and influenced by the Supreme Court's interpretation of the federal constitution, but we would be derelict in our constitutional responsibility to suggest that meanings ascribed to the Sixth Amendment by the United States Supreme Court authoritatively and unalterably dictate our interpretation of the breadth and scope of Section 11.

"It is the inviolate right of freemen ... to have the assistance of counsel when being prosecuted for the commission of a crime." *Cass v. Commonwealth,* 236 Ky. 462, 33 S.W.2d 332, 333–334 (Ky.1930). Section 11 of the Kentucky Constitution provides in pertinent part: "In all criminal prosecutions the accused has the right to be heard by himself and counsel [.]" The fundamental importance of the right is evident from the fact that this same language appears in all preceding versions of Kentucky's constitutions since the founding of the Commonwealth in 1792.

Moreover, maintaining and protecting the integrity of the attorney-client relationship is an important public policy of this Commonwealth. This Court promulgates and enforces Rules of Professional Conduct, SCR 3.130 *et seq.,* to support and protect attorney-client relationships.[6] The

---

**5.** A notable exception to that observation is our recognition of the right to self-representation and the right to hybrid counsel, an exception compelled by express language of Section 11 not found within its federal counterpart. *See Wake v. Barker,* 514 S.W.2d 692, 695 (Ky.1974); *Deno v. Commonwealth,* 177 S.W.3d 753, 757 (Ky.2005).

**6.** Justice Scalia eschews the relevance of the Rules of Professional Conduct in this inquiry, at least insofar as the Rules bar a prosecutor from communicating with a criminal defendant who is known to be represented by another lawyer. "[T]he Constitution does not codify the [Rules of Professional Conduct], and does not make investigating police officers lawyers." *Montejo,* 556 U.S. at 790, 129 S.Ct. 2079. Justice Scalia's disdain runs afoul of the Supreme Court's earlier statement in *Maine v. Moulton,* 474 U.S. 159, 171, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985): "[T]he scope of the State's obligation in this regard [is clear] that, at the very least, the prosecutor and police have an affirmative obligation not to act in a manner that circumvents and thereby dilutes the protection afforded by the

Kentucky Rules of Evidence, adopted by this Court with the express endorsement of the General Assembly, include KRE 503, "Lawyer-client privilege," to protect the confidentiality of lawyer-client communications. Furthermore, the General Assembly funds the Department of Public Advocacy, KRS 31.010 *et seq.*, with millions of dollars each year to form lawyer-client relationships between legal counsel and persons accused of crimes. This manifestation of public policy reflects the constitutional underpinning of the attorney-client relationship in the context of criminal prosecutions.

*Linehan* and *Jackson* reinforced the attorney-client relationship guaranteed by Section 11 and nurtured by Kentucky public policy by barring the police from interceding between the accused and his attorney after formal prosecution had begun. The *Montejo* court, by discounting the social value of the attorney-client relationship in a cost-benefit analysis, completely disregarded the unavoidable deterioration of the right to counsel that results when prosecuting authorities are permitted to send police interrogators to conduct custodial interviews with accused persons about the pending charges without the knowledge of their attorneys.

Under *Montejo*, the police must first have at least the *pro forma* waiver of the right to have counsel informed and present, but such waivers executed without consulting counsel are easily induced. Away from the watchful eye and pragmatic advice of counsel, police are left with an easy opportunity to adeptly place a wedge between the accused and his lawyer. For example, the police may entice an unsuspecting defendant with favors his attorney cannot obtain, like alluring assurances of better outcomes and offers of leniency in exchange for cooperative waivers. *Montejo's* degradation of the right to counsel is antithetical to our perception of the right to counsel provided under Section 11 of the Kentucky Constitution. The *Montejo* majority maintains that its decision preserves the right of the defendant who is "perfectly capable of interacting with the police on his own," *Id.*, at 793, 129 S.Ct. 2079, to decide for himself whether he wants his attorney's assistance during a conversation with police. *Jackson* did not, and *Linehan* does not, foreclose that option. Neither case bars the use of evidence obtained when the defendant initiated the conversation with police. At most, *Jackson* impeded a defendant's ability to waive the presence of his attorney based solely upon a one-sided conversation with the police.

Given the shift in federal jurisprudence represented by *Montejo*, we must reevaluate our earlier expressions that the right to counsel under Section 11 "affords no greater protections" than what the United States Supreme Court ascribes to the Sixth Amendment. We do so, not because we have changed our minds about Section 11, but because of the Supreme Court's abrupt recalibration of its perception of the Sixth Amendment. We stand by the decision we made in *Linehan* which has served well the purpose of Section 11 and interests of justice in the Commonwealth for the past twenty-five years. While we respect the Supreme Court's authority for the interpretation of federal law, we cannot tether the Kentucky Constitution to the Supreme Court's evolving standards of Sixth Amendment protections.

right to counsel." Of course state and federal constitutions do not codify the Rules of Professional Conduct, which nearly every state has adopted. But the Rules of Professional Conduct do reflect long-established perceptions about the scope of constitutional protections, including the right to counsel, and the Rules serve to reinforce those constitutional provisions through ethical standards of conduct.

Our survey of the decisions from other state courts facing this same question produced scant results. It appears that only three states have considered the effect of *Montejo* on their own state constitutional right to counsel, and there is no consensus. In *State v. Bevel*, 231 W.Va. 346, 745 S.E.2d 237 (W.Va.2013), the West Virginia Supreme Court held as we do today:

"The only changed condition present in this case is that the U.S. Supreme Court has decided *Montejo*, which provides a right to counsel differing from that provided in [West Virginia precedent based upon *Jackson* ]."

. . .

We now explicitly hold that if police initiate interrogation after a defendant asserts his right to counsel at an arraignment or similar proceeding, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid as being taken in violation of the defendant's right to counsel under article III, section 14 of the Constitution of West Virginia.

*Id.* at 246–247.

The Supreme Court of Kansas, in *State v. Lawson*, 296 Kan. 1084, 297 P.3d 1164 (2013), reached the same result, but it avoided the question of whether the Kansas constitution afforded greater protection than the Sixth Amendment because the greater level of protection consistent with *Jackson* was provided by a Kansas statute. In *State v. Delebreau*, the Wisconsin Supreme Court reached the opposite conclusion, overruling in light of *Montejo* existing state precedent based upon *Jackson*: "[B]ecause [based on *Montejeo*] Delebreau's right to counsel was not violated under the Sixth Amendment, we also hold that his right to counsel was not violated under Article I, Section 7 of the Wisconsin Constitution." 362 Wis.2d 542, 864 N.W.2d 852, 863 (2015).

Based upon the foregoing considerations, we reaffirm the rationale of *Linehan* as a manifestation of the right to counsel under Section 11 of the Kentucky Constitution. In summary, once the right to counsel has attached by the commencement of formal criminal charges, any subsequent waiver of that right during a police-initiated custodial interview is ineffective. *Linehan*, 878 S.W.2d at 11. "Police and prosecutorial authorities are at liberty to question a willing suspect about new offenses without regard to whether there is prosecution pending on other charges, whether similar or different in nature, but they must be cognizant that the evidence thus obtained may not be used to incriminate him on pending charges wherein he is represented unless his counsel is present." *Id.* at 12. Accordingly, the opinion of the Court of Appeals is reversed.

## III.  CONCLUSION

For the reasons set forth above, we reverse the opinion of the Court of Appeals and the judgment entered herein by the Graves Circuit Court, and remand this matter to the Graves Circuit Court for further proceedings consistent with this opinion.

All sitting.  All concur.