# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 27, 2023
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0186-MR

JOHN HUNTER                                                          APPELLANT

V.
ON APPEAL FROM PIKE CIRCUIT COURT
HONORABLE EDDY COLEMAN, JUDGE
NO. 20-CR-00350

COMMONWEALTH OF KENTUCKY                                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

John Hunter was convicted in the Pike Circuit Court of one count of first-degree rape and one count of incest by forcible compulsion. These convictions involved sexual acts against his adult biological daughter, R.A. Hunter was sentenced to twenty years in prison consistent with the jury's recommendation and he now appeals as a matter of right. After careful review, we affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

In large part, there is little dispute regarding the underlying facts of this case. R.A. is the biological daughter of John Hunter. Hunter separated from R.A.'s biological mother at the time of her birth. Hunter saw R.A. relatively few times throughout her life. His counsel stated in opening he had seen her approximately nine times in her life. Similarly, Detective Chase Maynard with

the Kentucky State Police testified that R.A. told him she had only seen her father approximately six times in her life. According to R.A., she did not see him often; however, he did send her birthday cards which caused her to long for a further relationship with her father.

By all accounts, R.A. reached out to her father in early 2020 to request his help with the remodel of her home in Pike County. R.A.'s father was in the construction business, and she believed it was a good idea for him to help her with the project. Further, she had an idea that perhaps the two of them could start a construction business. Hunter agreed to come help with the remodel and subsequently stayed in a camper in the backyard of R.A.'s residence.

On the evening of July 2, 2020, R.A. and Hunter went together in a Chevy Blazer to look for a rose bush planted by Hunter's great-grandmother. Hunter drove the vehicle. Hunter told R.A. that they could replant the bush in R.A.'s yard. The two of them had gotten into an argument the night before over a domain name for their company. The excursion to obtain the rose bush was also characterized as a peace mission between father and daughter.

The record also established on the evening of the assault both had been drinking. Hunter was drinking "Twisted Teas" and R.A. also acknowledged drinking vodka shots. While looking for the rose bush, both parties state that Hunter stopped the truck and said they were stuck. At this point the parties' stories differ. R.A. states when she exited the vehicle, Hunter came up to her from behind and grabbed her shorts by the belt loops. He pulled off her pants, and R.A. was scared and startled. She pleaded with him to look at her, hoping

2

it would make him realize what he was doing. R.A. testified that he performed oral sex on her as well as penetrated her vagina with his penis. She stated that he commented "of course she had the best pussy because he made it." (VR 02/07/22; 03:03:49). R.A. was burned by a cigarette on her wrist and between her breasts during the incident. Eventually, the assault stopped when R.A.'s phone rang with her sister calling. She answered the phone but did not tell her sister what was going on at that point because she did not feel safe to do so.

At that time, the assault stopped. Hunter took R.A. home. She testified that he told her she "better wash that thing." (*Id.* at 03:08:20). R.A. stated her body hurt and she wanted to get her kids out of the house. She further stated she wanted to get warm in a hot bath. Later, she took her kids to her grandmother's, and her sister took her to the hospital. R.A. had her sister pull over at a McDonald's where she called the police to report the incident. She then went to the emergency room.

At the hospital, a specifically trained sexual assault nurse examiner, "SANE," performed an examination. Nurse Cindy Adkins with the Pikeville Medical Center performed the exam and testified at trial. Nurse Adkins had been a nurse for sixteen years and had a sexual assault certification. R.A. testified the exam was very hard for her. She told a story of medical personnel pulling her open and pouring dye on her so photographs could be taken. She testified that she was in pain, her back hurt, and she felt like she had rocks thrown at her.

3

Nurse Adkins detailed the examination of R.A. She took a blood sample, a vaginal swab, and a buccal swab to preserve any DNA evidence. The nurse also testified she took hair samples. She explained a diagram of the vagina like a clock and noted blunt force trauma and tearing to R.A.'s vagina at twelve-o-clock and six-o-clock. She further photographed the victim's injuries. The vaginal swab tested positive for semen. The DNA analyzed from the swab was consistent with three individuals and both Hunter and R.A.'s DNA were present. The testimony did not indicate if the DNA was from saliva or semen. Notwithstanding the uncertainty of which type of fluid, the father's DNA appeared on the vaginal swab from his daughter.

Kentucky State Police Trooper Chase Maynard also testified at trial. Maynard went to the hospital to interview R.A. after the incident. He also collected the rape kit. Trooper Maynard said that R.A. was banged up, upset, and scared. He stated he took pictures of her injuries. Trooper Maynard testified that R.A. indicated the perpetrator was her father. As a result of his investigation, he obtained an arrest warrant for Hunter. During his testimony, Trooper Maynard also played an interview he conducted with defendant Hunter at the jail. Hunter's *Miranda* rights were read to him at the beginning of the interview. The jury heard Hunter repeatedly deny the incident. He stated his truck had gotten stuck that day on Bear Fork. He acknowledged he was with R.A., and they were both drinking. Later in the interview, he stated that R.A. was dancing on him. He also testified she said, "spit on it, Daddy, spit on it for me." (*Id.* at 02:01:25) Hunter stated he suffered from erectile disfunction and

4

did not believe he could have had his penis go inside her. He also stated he could not remember if he took Viagra that day.

Hunter did not testify at trial and the defense did not call witnesses. In arguing jury instructions, the defense requested a lesser-included instruction of sexual misconduct. The trial court ruled it would give a lesser-included instruction of sexual abuse but declined to give an instruction on sexual misconduct. After deliberation, the jury found Hunter guilty of first-degree rape and incest by forcible compulsion. Defense counsel argued that sentencing on both would violate double jeopardy as they arose from the same incident. As a result, the Commonwealth dismissed the incest charge. This left the first-degree rape conviction on the table for the penalty phase. During the penalty, the defense asked for the minimum sentence and the Commonwealth did not make an argument. The jury recommended a penalty of twenty years in prison on the first-degree rape conviction.

Importantly for this review, on February 10, 2022, two days after trial, Hunter's counsel filed a motion to set aside the verdict and for a new trial. In the motion, defense counsel stated the day after trial, counsel for the Commonwealth informed defense counsel that Hunter's statement should have been subject to suppression. The record reflects that Hunter was assigned an attorney on July 6, 2020. Trooper Maynard's interview with the defendant was July 7, 2020. Despite having counsel at the time, Hunter was alone during the interview. Hunter did not make a motion to suppress his statement prior to

5

the trial. Further, Hunter did not object to the statement when it was introduced at trial by the Commonwealth.

Judge Coleman held a hearing on the motion for a new trial. At the hearing, defense counsel argued that the statement influenced her advice to her client not to take the stand. Counsel argued the trial would have proceeded differently without the statement. The Commonwealth argued that there was significant other evidence in the case and the jury's finding did not hinge on defendant's statement. To wit, the jury also heard testimony from the victim and saw photographs of her injuries. The Commonwealth cited the DNA results and testimony from witnesses. The trial court overruled defendant's motion for a new trial. Ultimately, the trial court imposed the maximum sentence of twenty years on the conviction for first-degree rape. This appeal follows.

## ANALYSIS

On appeal, Hunter argues two errors. First, the trial court erred by denying his motion for a new trial. This is based upon the argument that Hunter's recorded statement should have been suppressed. Second, the trial court erred in denying the defense's requested instruction for sexual misconduct. We address each argument in turn.

### I. The trial court properly denied Hunter's motion for a new trial.

Hunter first argues that the trial court erred in denying the defense's motion for a new trial because the Commonwealth's case relied heavily on a recorded statement that was taken in violation of Hunter's due process rights.

Counsel argues the contents of the recorded statement should have been suppressed because it likely angered the jurors. Rule of Criminal Procedure (RCr) 10.02 governs the trial court's authority to grant a new trial. The rule states "[u]pon motion of a defendant, the court may grant a new trial for any cause which prevented the defendant from having a fair trial, or if required in the interest of justice." RCr 10.02(1). Defendant's arguments for a new trial fail for the following reasons.

First, Hunter failed to properly raise this issue before or at the time of trial. It is undisputed that Hunter did not object to the introduction of the recorded statement when it was played during Trooper Maynard's testimony. Further, Hunter neither filed a motion to suppress the statement nor a pretrial motion in limine to exclude the introduction of this evidence. Those were the proper remedies for excluding the statement. Without knowing either side's strategy, it certainly could have been reasonable for the defense to allow the statement to be played because it presented the defendant's denial of the incident to the jury. Hunter further argues that the statement likely angered the jurors based upon his statements regarding his daughter and his rationalizations that they had not known each other well. Hunter argues he was prejudiced by the admission of the statement. For emphasis he points to the fact that the jury watched Hunter's statement again during deliberations. While it is impossible for this Court to know whether the jury interpreted the statement to characterize Hunter as truthful and misunderstood or pugnacious

7

and dishonest, it seems fundamentally unfair to allow defense counsel to wait and decide after the verdict whether to seek suppression.

RCr 10.06(1) includes "newly discovered evidence" as a potential basis for granting a new trial. In fact, the Commonwealth's brief analyzes defense's motion under a "newly discovered evidence" standard, reasoning this was the only clear basis for the motion. The Commonwealth argues it is an error to characterize Hunter's statement as newly discovered evidence. It submits that Hunter's motion should have been accompanied by an affidavit showing he exercised sufficient diligence to obtain this evidence prior to trial. *Collins v. Commonwealth*, 951 S.W.2d 569, 576 (Ky. 1997) (citing *Wheeler v. Commonwealth*, 395 S.W.2d 569 (Ky. 1965)). There was no such affidavit or explanation. In fact, the record is clear that the interview was on July 7, 2020, and that counsel was appointed for Hunter on July 6, 2020. Both the Commonwealth and the defense had equal access to the dates relevant to this issue. As a result, this is not a situation of a failure to disclose by the Commonwealth or where information was hidden from either party.

In addition, even if this Court were to decide that defendant's motion presents newly discovered evidence, it is well-accepted that a new trial is only warranted based upon newly discovered evidence that carries such a significance that it would change the outcome or verdict with reasonable certainty. *Bedingfield v. Commonwealth*, 260 S.W.3d 805, 810 (Ky. 2008). Courts have found that new evidence, which is merely cumulative, collateral or impeaches a witness is not sufficient to warrant a new trial. *Id*. If the evidence

8

would have probably induced a different conclusion by the jury, then the interests of justice demand that the defendant is entitled to have the evidence placed before the court. *Id.*

In this case, the statement at issue was a denial of guilt. Furthermore, the jury had other significant evidence establishing guilt. The SANE nurse testified that Hunter's DNA was in the vagina of the victim. In addition, there were visible physical injuries to the victim's vagina that were both documented and photographed at the hospital. The jury heard testimony from the victim who described the incidents and the rape in her own words. The jury heard from other witnesses who observed the victim soon after the incident. Defense counsel has failed to show with reasonable certainty the outcome of the trial would have been different but for the admission of the statement.

Hunter countered in his reply brief that it may not be newly discovered evidence but, "it seems more reasonable upon fair reading of the defense motion that this is a situation of newly uncovered case law, or a new realization of the application of case law to existing facts." Despite this assertion, Hunter does not cite any new or changed legal authority he alleges support his position. He declines further to provide an analysis or any prior decisions applying existing law in a manner consistent with this theory.

This situation is more properly characterized as invited error. Under Kentucky law, a party is generally estopped from asserting an invited error on appeal. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citing *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006)). In *Quisenberrry,* this

9

Court looked to the Ninth Circuit and stated that a party's knowing relinquishment of a right is not subject to review. *Id.* at 38 (citing *United States v. Perez,* 116 F.3d 840 (9th Cir. 1997)). "Invited errors amount to a waiver and are not subject to appellate review." *Webster v. Commonwealth,* 438 S.W.3d 321, 324 (Ky. 2014). In *Kelly v. Commonwealth,* 554 S.W.3d 854, 866 (Ky. 2018), the Court reiterated this point and noted even a statement made violating the defendant's *Miranda* rights that was later admitted at trial to be an invited error. *See Clay v. Commonwealth,* 2012-SC-000421-MR, 2014 WL 4160134, at *3 (Ky. Aug. 21, 2014).

Defendant argues despite his failure to object at trial, this Court's reasoning in *Keysor v. Commonwealth,* 486 S.W.3d 273, 282 (Ky. 2016), requires a new trial. In *Keysor,* as here, the defendant was represented by counsel when the police took a statement from him. *Id.* at 275. The defendant made a motion to suppress the statement and entered a plea of guilt reserving for appeal the issue of the statement. *Id.* at 275-76. The Court held once the right to counsel has attached by the commencement of formal criminal charges, any subsequent waiver of that right during a police in-custody interview was ineffective. *Id.* at 282. However, *Keysor* is distinguishable because the defendant timely made a motion to suppress the statement prior to the plea. While *Keysor* stands for the proposition that Hunter's waiver of counsel after *Miranda* warnings was not sufficient, it does not address a defendant's failure to raise the issue until after trial.

10

Finally, this Court reviews a trial court's decision regarding a motion for a new trial on an abuse of discretion standard. *Bedingfield*, 260 S.W.3d at 810. This Court does not find the trial judge's decision "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Here, Judge Coleman held a hearing on a motion for a new trial. He further entered a written order with findings denying the motion. In the order entered on April 13, 2020, the trial judge found the motion lacked merit pursuant to *Fortney v. Commonwealth*, 290 Ky. 659, 162 S.W.2d 193, 195 (1942), which provides that a verdict in a criminal case should be set aside only when it is so flagrantly against the evidence as to indicate it was reached as a result of passion or prejudice on the part of the jury. The trial court found that the jury relied on other evidence outside of the statement in reaching their verdict. The trial court also noted the defendant denied the rape occurred in the statement. In addition, the trial court held that the proper vehicle was a suppression motion or an objection at trial. Overall, the trial court's decision to deny the motion was not unreasonable, unfair or unsupported by sound legal principles. We find no abuse of discretion.

**II.    The trial court properly denied defendant's requested instruction of sexual misconduct.**

Hunter's next argument is that the trial court erred in not providing an instruction on sexual misconduct as a lesser-included offense of first-degree rape. Hunter tendered and argued for both a sexual abuse and sexual misconduct instruction, and therefore, this issue is preserved for appeal.

11

*Swan v. Commonwealth*, 384 S.W.3d 77, 98 (Ky. 2012).  Having determined this issue is preserved for review, the Court next must decide if such an instruction was warranted.  When a trial court errs in either failing to provide a requested jury instruction or in providing an unwarranted jury instruction, an appellate court should review under an abuse of discretion standard. *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018).  When reviewing an allegation of error in an instruction regarding its content, the Court reviews the decision *de novo*.  *Id.*  Here Hunter alleges the trial court erred in denying his request for an instruction on sexual misconduct and the Court reviews this decision under an abuse of discretion standard.  *Caudill*, 540 S.W.3d at 367.

A defendant has the right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions, including instructing as to lesser-included offenses.  *Allen v. Commonwealth*, 338 S.W.3d 252, 255 (Ky. 2011).  An instruction regarding a lesser-included offense is warranted if under the evidence presented a reasonable juror could have a reasonable doubt as to the defendant's guilt for the greater charge but find beyond a reasonable doubt that the defendant is guilty of a lesser charge.  *Id.*  In this matter, the jury was instructed on first-degree rape and first-degree sexual abuse as the lesser-included offense. Considering the evidence under these instructions, the jury found Hunter guilty of first-degree rape.

Kentucky Revised Statute (KRS) 510.140(1) states "[a] person is guilty of sexual misconduct when he engages in sexual intercourse or deviate sexual

intercourse with another person without the latter's consent." Hunter argues that there is nothing in the plain language of KRS 510.140 that mentions any requirement as to the age, relationship, or capacity of the alleged victim.

When considering this argument, at first blush, it appears to carry great weight. However, there is significant jurisprudence by this Court holding that sexual misconduct is only a lesser-included offense to first-degree rape in situations where it is possible, because of the perpetrator's age, that he or she is too young to be guilty of a felony offense. In *Cooper v. Commonwealth*, 550 S.W.2d 478, 480 (Ky. 1977), we stated:

> KRS 510.140 therefore, as interpreted by the commentary, is concerned with cases not specifically covered by other sections of Chapter 510, and appellant's argument that he was convicted in violation of the equal protection amendment is without merit. In the present case both appellant and the victim were over 21 years of age and neither was physically or mentally incapacitated. KRS 510.140 was simply not applicable and the trial court properly refused to instruct the jury on the offense of sexual misconduct.

The Court affirmed this position in *Jenkins v. Commonwealth*, 496 S.W.3d 435 (Ky. 2016). The Court again analyzed how to construe KRS 510.140 with other statutes outlining nonconsensual intercourse. Following the same reasoning as *Cooper*, the Court found defendant's conviction of first-degree rape and first-degree sodomy did not warrant sexual misconduct as a lesser-included offense. *Id.* at 450. The Court found that because both the defendant Jenkins and the victim were over the pertinent ages at the time of the offenses, sexual misconduct had no application to the case. The Court further observed that while the plain language of the statute overlapped with other statutes outlining rape and sodomy, the commentary to the statute

13

expressly adopted by the General Assembly indicated that the misdemeanor was intended to fill the gaps left in statutory rape and statutory sodomy cases. *Id.* In *Jenkins* the Court notes that this interpretation of KRS 510.140 has been applied a number of times. *Id.* (citing *Deno v. Commonwealth*, 177 S.W.3d 753 (Ky. 2005) and *Spencer v. Commonwealth*, 554 S.W.2d 355 (Ky. 1977)).

Hunter requests this Court instead adopt the reasoning of the dissent in *Jenkins*. The dissent notes that the cases supporting this interpretation of the sexual misconduct statute have respected *stare decisis* but strongly criticizes the reliance on legislative commentary rather than the plain language of the statute. Hunter states that a sexual misconduct instruction is appropriate because a reasonable juror based on these facts could have believed that the forcible compulsion necessary for a first-degree rape was not present despite R.A.'s lack of consent. We disagree.

In this case, Hunter was forty-two years old at the time of the alleged assault. There is no dispute that R.A. was an adult at the time of the assault. Further, there is no evidence that either was mentally incapacitated at the time of the incident. Even assuming the facts in this case merit such an interpretation, the case law interpreting these statutes does not support using the instruction as argued by defendant. Additionally, the jury had the lesser option of sexual abuse first as outlined in KRS 510.110. Both because of legislative intent and judicial interpretation, the trial court properly declined to include the charge of sexual misconduct.

14

## **CONCLUSION**

For the forgoing reasons, we affirm the judgment and sentence of the Pike Circuit Court.

All sitting. Vanmeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only.

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General