[Cite as *State v. Morris*, 2023-Ohio-4105.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230108 |
| | | TRIAL NO. B-2202366 |
| Plaintiff-Appellant, | : | |
| vs. | | |
| | : | |
| ISAIAH MORRIS, | | *O P I N I O N.* |
| | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 15, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.,* Chief Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista Gieske,* Assistant Public Defender*,* for Defendant-Appellee.

**Bоск, Judge.**

{¶1}    Under Article I, Section 10 of the Ohio Constitution, a person accused of a crime in Ohio is guaranteed the right to counsel. This appeal concerns that state constitutional right and the admissibility of a defendant's uncounseled statements made in a police-initiated interrogation, where the defendant had been arrested, arraigned, and appointed counsel, and after the defendant signed a "Notification of Rights" form without counsel present. We hold that, in these circumstances, the defendant's purported waiver is invalid and therefore, we affirm the trial court's suppression of defendant-appellee Isaiah Morris's statements.

## I. Facts and Procedure

{¶2}    In May 2023, Morris was arrested and jailed for multiple counts of felonious assault and other offenses unrelated to this appeal. The following morning, Morris was brought to "Room A" at the Hamilton County Justice Center for an arraignment. At his arraignment, the judge reviewed the complaint, determined probable cause, set bond, and appointed counsel to represent Morris.

{¶3}    That afternoon, and before Morris had an opportunity to speak with his attorney, Detectives Glecker and Bender of the Cincinnati Police Department interrogated Morris in the Justice Center. The interrogation began with Detective Glecker's word-for-word reading of a "Notification of Rights" form, which provided, in relevant part:

> You have the right to talk to a lawyer for advice before we ask you any
> questions and to have him with you during the questioning.
> If you cannot afford a lawyer, one will be appointed for you before any
> questioning, if you wish.
> If you decide to answer questions now without a lawyer present, you will

still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

\* \* \*

I understand my rights.

**Signed**_____

{**¶4**}  Morris signed the form. The interrogation lasted roughly two hours.

{**¶5**}  Morris moved to suppress the statements made during the interrogation as a violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and his rights under Article I, Section 10 of the Ohio Constitution. In his motion and at the suppression hearing, Morris argued that the right to counsel under the Ohio Constitution affords greater protections than the right under the United States Constitution.

{**¶6**}  At the suppression hearing, Detective Glecker recalled advising Morris of his *Miranda* rights before Morris signed the "Notification of Rights" form. Glecker acknowledged that the form omits any mention of a "waiver." The state entered into evidence Detective Glecker's bodycam footage from the interrogation and the "Notification of Rights" form. His testimony covered his experience as an officer, his familiarity with the arraignment process, and the interrogation.

{**¶7**}  At the close of the hearing, Morris argued that the signed "Notification of Rights" form did not constitute a waiver of his rights, and reiterated his stance that the state constitutional right to counsel provides more robust protections than the federal right. In response, the state contended that Morris had waived his rights under the Fifth and Sixth Amendments to the United States Constitution. Subsequently, both parties submitted supplemental memoranda reiterating these very arguments.

3

{¶8} The trial court suppressed Morris's statements. The trial court explained that it offered the parties an opportunity to file supplemental briefing and that the state "did not address the Ohio Constitutional issues." The trial court found that the designation-of-counsel form was docketed the morning of Morris's interrogation, Morris's counsel was not notified of the interrogation, the detectives "did not ask Mr. Morris to sign a waiver or acknowledge orally that he was waiving his *Miranda* rights," and the detectives asked Morris about the offense for which Morris was arrested and appointed counsel hours before the interrogation.

{¶9} Additionally, the trial court found that Morris asked, "I can't see a lawyer?" roughly 45 minutes into the interrogation. Detective Glecker replied, "[A]nybody can talk to a lawyer." And Morris responded, "[Y]eah, cause that's, we goin' to do that cause I don't know what you are talking about." Detective Glecker continued the interrogation.

{¶10} The trial court found that Morris's right to counsel had attached at the arraignment. It acknowledged the United States Supreme Court's opinion in *Montejo v. Louisiana,* 556 U.S. 778, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), which held that the state does not violate an accused's right to counsel under the United States Constitution when law enforcement initiates an interrogation after a defendant secures counsel at arraignment.

{¶11} The trial court, however, relied on the right to counsel under the Ohio Constitution as the basis for suppressing Morris's statements. The trial court conducted an extensive inquiry into the right to counsel under the Ohio Constitution and identified persuasive reasons to find that the Ohio Constitution offers broader right-to-counsel protections than the United States Constitution. It cited the constitutional text, state precedent, the centrality of the right to counsel in Ohio's

4

criminal legal system, and Kentucky, West Virginia, and Kansas Supreme Court cases, which rejected *Montejo*. Because it found that Ohio's Constitution prohibits the state from initiating uncounseled interrogations after an accused has secured counsel, the trial court suppressed all uncounseled statements made by Morris during the interrogation.

{¶12} Alternatively, the trial court found that Morris's remarks to the detective, "can't I talk to a lawyer?" and "yeah cause that's – we goin' to do that because I don't know what you're talking about," constituted an unequivocal request for an attorney during the interrogation. Therefore, the trial court also found that all statements following that request must be suppressed under the Sixth Amendment to the United States Constitution.

{¶13} The state appeals the trial court's suppression of Morris's statements.

## II. Law and Analysis

{¶14} The state's sole assignment of error asserts that the trial court erred as a matter of law by granting Morris's motion to suppress. It offers four issues for review. First, the state argues that Morris's right to counsel had not attached because he had not been formally indicted. Next, the state contends that *Montejo v. Louisiana* governs Morris's right to counsel. Third, the state asserts that the Ohio Constitution does not guarantee a broader right to counsel than the federal Constitution. Finally, the state maintains that Morris did not unambiguously request counsel at the 45-minute mark of the interrogation.

{¶15} The state's appeal of the trial court's decision to grant Morris's motion to suppress "presents a mixed question of law and fact." *State v. Hampton*, 1st Dist. Hamilton No. C-210423, 2022-Ohio-1380, ¶ 5, citing *State v. Winfrey*, 1st Dist. Hamilton No. C-070490, 2008-Ohio-3160, ¶ 19. We "must accept the trial court's

5

findings of fact if they are supported by competent and credible evidence." *Id.*, quoting *Winfrey* at ¶ 19. But we "must independently determine, without deference to the trial court, whether the facts satisfy the applicable legal standard." *State v. Bell*, 1st Dist. Hamilton Nos. C-050537 and C-050539, 2007-Ohio-310, ¶ 50.

### A. The Right to Counsel Attached at Morris's Arraignment

**{¶16}** The state first asserts that the trial court mistakenly analyzed Morris's right to counsel under the Sixth Amendment to the United States Constitution. Instead, the state insists, Morris's interrogation and confession must be analyzed under the Fifth Amendment to the United States Constitution.

**{¶17}** Both Article I, Section 10 of the Ohio Constitution and the Fifth Amendment to the United States Constitution guarantee to individuals a right against compulsory self-incrimination during police interrogations. *See New York v. Quarles,* 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); *see also State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶ 43. To protect that right, the United States Supreme Court "established a set of specific protective guidelines, now commonly known as the *Miranda* rules." *Michigan v. Tucker*, 417 U.S. 433, 443, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). These protective guidelines, or prophylactic rules, require law enforcement to warn an individual in custody "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* at 443-444, quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**{¶18}** Absent these warnings, "statements obtained during a custodial interrogation are inadmissible." *State v. Montgomery*, 1st Dist. Hamilton No. C-220063, 2022-Ohio-4030, ¶ 17, citing *State v. Hill*, 1st Dist. Hamilton No. C-170507,

2018-Ohio-3130, ¶ 45. *Miranda* warnings are not required unless the individual is in custody and subjected to an interrogation. *See State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.); *see also Hill* at ¶ 46.

**{¶19}** Beyond *Miranda*'s prophylactic protection of the right to counsel, under Article I, Section 10 of the Ohio Constitution and the Sixth Amendment to the United States Constitution, a person accused of a crime is guaranteed the right to counsel. This right "is a necessary and cherished aspect of our adversarial system of justice." *State v. Chinn*, 2d Dist. Montgomery No. 11835, 1991 Ohio App. LEXIS 6497, 42-43 (Dec. 27, 1991). This right is both broader and narrower than the right under *Miranda*. It is broader as it applies outside of custodial interrogations—it applies to all "critical stages of criminal proceedings." *State v. Wright*, 4th Dist. Highland No. 19CA14, 2020-Ohio-275, ¶ 6; *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

**{¶20}** The right is narrower because it "does not attach until a prosecution is commenced." *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 64. This is because it is an *accused's* right to counsel. In other words, the right "becomes applicable only when the government's role shifts from investigation to accusation." *Moran v. Burbine*, 475 U.S. 412, 430, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). So what matters is the initiation of "adversarial judicial proceedings * * * 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *State v. Norman*, 137 Ohio App.3d 184, 198, 738 N.E.2d 403 (1st Dist.1999), quoting *Kirby v. Illinois*, 406 U.S. 682, 688-690, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Adversarial criminal proceedings may commence at "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, [which] marks the start of

adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie Cty.,* 554 U.S. 191, 208, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008).

{¶21} Ohio courts have recognized that the right "attaches at 'the initiation of adversary judicial criminal proceedings' such as a preliminary examination." *State v. Yoder*, 5th Dist. Stark No. 2011-CA-00027, 2011-Ohio-4975, ¶ 64 (right to counsel attached when defendant "was arraigned and appointed counsel"), quoting *Moore v. Illinois*, 434 U.S. 220, 231, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *see State v. Dell*, 2022-Ohio-2483, 192 N.E.3d 1288, ¶ 41 (5th Dist.) ("A preliminary hearing is a critical stage of the criminal process during which a defendant's fundamental right to counsel is protected.").

{¶22} The state acknowledges that, hours before the interrogation, Morris was brought before a judicial officer for his arraignment. *See* Hamilton County Municipal Court Loc.R. 9.11(b)(1). During his arraignment, the judge established bond, apprised Morris of the nature of the charge, determined probable cause, and appointed counsel. *See* Crim.R. 5(A).

{¶23} But the state invokes our opinion in *Bell* to argue that Morris's right did not attach without a formal indictment. In *Bell,* we held that the defendant's Sixth Amendment right to counsel had not attached before an interrogation because attachment requires the initiation of formal charges and "the state had not indicted Bell at the time of the January 15 interview." *Bell,* 1st Dist. Hamilton Nos. C-050537 and C-050539, 2007-Ohio-310, at ¶ 54. Unlike Morris, Bell had not been brought before a judge for his arraignment before police interviewed him. Instead, that interview occurred after officers arrested Bell, "took him to the Springfield Township Police Department, where he was advised of his *Miranda* rights and placed in an

8

interview room with Detective Kemper." *Id.* at ¶ 27. Therefore, *Bell* is properly understood to stand for the principle that a defendant's right to counsel does not attach at arrest. *See State v. McBride,* 2d Dist. Montgomery No. 8914, 1985 Ohio App. LEXIS 5936, 25 (Feb. 27, 1985) ("Formal charging, filing a complaint, a court appearance, preliminary hearing, indictment, information or arraignment will activate the right, however, an arrest warrant alone is probably insufficient.").

**{¶24}** Because Morris's arraignment marked the start of adversarial judicial proceedings, his right to counsel attached.

## B. Right to Counsel in Ohio

**{¶25}** The state challenges the trial court's decision to suppress Morris's statements as a violation of his right to counsel under the Ohio Constitution.

### 1. *Waiver*

**{¶26}** As an initial matter, Morris argues that the state forfeited its state constitutional argument. Morris raised the state constitutional violation in his motion and at the suppression hearing, but the state failed to argue why *Montejo* controls the right to counsel under Article I, Section 10 of the Ohio Constitution. In fact, the trial court requested supplemental briefing and the state failed to reference the Ohio Constitution. The trial court recognized this fact in its decision. Now, for the first time, the state argues that the right to counsel under the Ohio Constitution is no greater than the right under the United States Constitution.

**{¶27}** We recognize the well-established principle "that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 158 Ohio St.3d 513, 2019-Ohio-5156, 145 N.E.3d 278, ¶ 10. This contemporaneous-objection rule is a principle of "fair administration of justice" and relates to "the true relation between court and counsel which enjoins upon counsel the duty to exercise

9

diligence and to aid the court, [] not by silence to mislead the court into the commission of error." *State v. Tudor*, 154 Ohio St. 249, 257-258, 95 N.E.2d 385 (1950). This principle, of course, applies to the state's appeal of a decision granting a motion to suppress. *See Wintermeyer* at ¶ 25 ("when the state does not assert in the trial court that a defendant lacks Fourth Amendment standing to challenge a contested search or seizure, the state may not assert that argument in its own appeal from a judgment granting a motion to suppress."). Nevertheless, Morris raised the state constitutional issue in his motion to suppress and the state insisted that the United States Supreme Court's interpretation of the federal constitutional right controls. Therefore, we will address the merits of the parties' arguments.

### 2. *Sixth Amendment Right to Counsel*

{¶28} The parties agree that a criminal defendant may waive the right to counsel under the Sixth Amendment to the United States Constitution at an interrogation. *See Montejo,* 556 U.S. at 787, 129 S.Ct. 2079, 173 L.Ed.2d 955. The issue here is whether the right to counsel under Article I, Section 10 of the Ohio Constitution is bound by *Montejo*'s interpretation of the Sixth Amendment.

{¶29} The state argues that the signed "Notification of Rights" form constitutes a valid waiver of his Sixth Amendment right to counsel under *Montejo*.[1] The trial court recognized that in *Montejo,* the United States Supreme Court expressly overruled *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In *Jackson,* the United States Supreme Court held that "if police initiate interrogation

---

[1] While the state recognizes that the trial court "did not rule on whether Morris, *before* questioning had begun, voluntarily waived his *Miranda* rights," the state contends that "the trial court implicitly ruled that Morris voluntarily waived his *Miranda* rights *before* police questioning. Otherwise, it would not have maintained that the *Montejo* decision was on point." But the trial court's decision makes clear that the Ohio Constitution prohibited the detectives "from initiating an interrogation." Thus, there was no need for the trial court to analyze the validity of the "Notification of Rights" form as a *Miranda* waiver.

after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Jackson* at 636. In *Montejo,* a divided United States Supreme Court reversed course, finding *Jackson* "unworkable" and that its benefits are limited to "preclud[ing] the state from badgering defendants into waiving their previously asserted right." *Montejo* at 793. Plus, the *Montejo* court weighed "the marginal benefits of the *Jackson* rule * * * against its substantial costs to the truth-seeking process and the justice system" and concluded that *Jackson* "does not 'pay its way.' " *Montejo* at 795. Accordingly, the *Montejo* court held that its Fifth Amendment prophylactic rules adequately protect the right to counsel under the Sixth Amendment and ensure the voluntariness of a defendant's waiver. *Id.* at 793.

{¶30} The trial court recognized that under *Montejo*, police may approach represented defendants for interrogation. The trial court then turned to whether Morris's uncounseled statements during the interrogation must be suppressed under the Ohio Constitution.

### 3. *Issue of first impression*

{¶31} We must determine, as a matter of first impression in this state, whether *Montejo* is consistent with the right to counsel under Article I, Section 10 of the Ohio Constitution. The state argues that the Fifth District considered this issue in *Yoder* and held that *Montejo's* interpretation of the federal right to counsel conforms to the right under the Ohio Constitution. We note that decisions of our sister state appellate courts are not controlling authority, though "we afford those decisions due consideration and respect." *Phillips v. Phillips,* 2014-Ohio-5439, 25 N.E.3d 371, ¶ 32 (5th Dist.). And without question, "the reasoning of other districts is persuasive." *State v. Thompson*, 1st Dist. Hamilton No. C-120516, 2013-Ohio-1981, ¶ 10.

11

**{¶32}** In *Yoder,* the court recognized that *Montejo* expressly overruled *Jackson* and "eliminated the per se invalidation of *Miranda* waiver once counsel was requested." *Yoder,* 5th Dist. Stark No. 2011-CA-00027, 2011-Ohio-4975, at ¶ 65. Like Morris, Yoder argued that the Ohio Constitution required the suppression of any uncounseled statements made to law enforcement after his arraignment. *Id.* at ¶ 67. While *Yoder* recited the Ohio Supreme Court's admonition for caution when interpreting rights under our state Constitution, a closer reading of *Yoder* reveals that the court did not address the state constitutional issue. *See id.* at ¶ 68, quoting *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 76. The court provided no analysis of Yoder's state constitutional claim. Instead, in affirming the trial court's decision denying his motion to suppress, the court relied on the fact that Yoder had stipulated that he "validly waive[d] his *Miranda* rights" before his interrogation. *Id.* at ¶ 69. As such, the court addressed the assignment of error in a manner that avoided the constitutional question. And *Yoder* is distinguishable as Morris has never stipulated that he validly waived his rights.

### 4. *State Constitutionalism*

**{¶33}** We begin with the principle that Ohio, and other states, are "free to construe their state constitutions as providing different or even broader individual liberties than those provided under the federal Constitution." *Arnold v. City of Cleveland*, 67 Ohio St.3d 35, 41, 616 N.E.2d 163 (1993). Indeed, "state constitutions are a vital and independent source of law." *Gardner* at ¶ 76, citing William J. Brennan, Jr., *The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights*, 61 N.Y.U.L.Rev. 535 (1986). This principle is well recognized in this state: "it is well to remember that Ohio is a sovereign state and that the fundamental guaranties of the Ohio Bill of Rights have undiminished vitality." *Direct*

*Plumbing Supply Co. v. Dayton,* 138 Ohio St. 540, 545, 38 N.E.2d 70 (1941). Therefore, courts may interpret the Ohio Constitution as affording greater rights if "such an interpretation is both prudent and not inconsistent with the intent of the framers." That is not to say that our state Constitution is wholly incongruous with its federal counterpart; rather, "[w]e can and should borrow from well-reasoned and persuasive precedent from other states and the federal courts." *State v. Mole*, 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 368, ¶ 22, citing *Davenport v. Garcia*, 834 S.W.2d 4, 20-21 (Tex.1992); *see Arnold* at 42.

{¶34} Our interpretation of the right to counsel under Article I, Section 10 of the Ohio Constitution "should not be driven simply by disagreement with the result reached by the federal courts' interpretation." *Gardner* at ¶ 20. When the language of the Ohio and United States Constitutions are coextensive, there should be "compelling reasons why Ohio constitutional law should differ from the federal law." *State v. Wogenstahl*, 75 Ohio St.3d 344, 363, 662 N.E.2d 311 (1996). But coextensive provisions under the Ohio and United States Constitutions do not foreclose the possibility that "[i]n some circumstances, rights afforded to people under the Ohio Constitution are greater than those afforded under the United States Constitution." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 26 (Fisher, J., concurring).

5. *Article I, Section 10 of the Ohio Constitution*

{¶35} Beginning with the constitutional text, Article I, Section 10 of the Ohio Constitution provides, in relevant part:

> *In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel*; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the

13

witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court.

(Emphasis added.)

{¶36} The Ohio Supreme Court has found this guaranty "comparable to[,] but independent of similar guarantees provided by the Sixth Amendment to the United States Constitution." *State v. Milligan*, 40 Ohio St.3d 341, 533 N.E.2d 724 (1988), paragraph one of the syllabus. Nevertheless, the right to counsel under Article I, Section 10 has been construed more broadly than its federal counterpart. *See State v. Bode,* 144 Ohio St.3d 155, 2015-Ohio-1519, 41 N.E.3d 1156, ¶ 23-27.

{¶37} Ohio's constitutional text plainly guarantees a criminal defendant the right to present a defense with counsel. And when read as a whole, Article I, Section 10 of the Ohio Constitution safeguards the integrity and fairness of a criminal trial. *See State v. Hester*, 45 Ohio St.2d 71, 79, 341 N.E.2d 304 (1976) (defendant must receive a fair trial and substantial justice); *see also State v. Petro*, 148 Ohio St. 473, 486, 76 N.E.2d 355 (1947) (right to demand the nature and cause of accusation ensures a fair trial); *State v. Hensley*, 75 Ohio St. 255, 264, 79 N.E. 462 (1906) (right to a public trial ensures fairness and justice); *State v. Lane,* 60 Ohio St.2d 112, 118-119, 397 N.E.2d

1338 (1979) (integrity of the trial process requires a neutral setting). Indeed, "careful has been the constitution to secure the pure and impartial administration of criminal justice, and to guard the accused from the possibility of oppression and wrong, under the forms of a criminal prosecution." *Kirk v. State*, 14 Ohio 511, 512 (1846).

### 6. *Ohio's Long-Standing History*

**{¶38}** Consistent with the purposes stated above, the attorney-client relationship is central to Ohio's criminal legal system. As early as 1816, indigent Ohioans were appointed counsel without cost. *See Conlan v. Haskins*, 177 Ohio St. 65, 68, 202 N.E.2d 419 (1964). In fact, the first General Assembly guaranteed that counsel would "have access to the accused at all reasonable hours." *Dille v. State*, 34 Ohio St. 617, 620 (1878). And a defendant in Ohio has long been afforded "a right to a reasonable opportunity to consult privately with his counsel without having other persons present." *Ford v. State*, 121 Ohio St. 292, 297, 168 N.E. 139 (1929), citing *Thomas v. Mills*, 117 Ohio St. 114, 121, 157 N.E. 488 (1927); *see Milligan* at 343.

**{¶39}** For the past 70 years, criminal defendants in Ohio have enjoyed "statutory rights to contact and consult with counsel beyond comparable rights which the federal and Ohio Constitutions guarantee." *Varnacini v. Registrar*, 59 Ohio App.3d 28, 30, 570 N.E.2d 296 (10th Dist.1989). Under R.C. 2935.20, after an arrest, an individual must be provided opportunities to communicate and consult with an attorney. The statute further provides that "[n]o officer or any other agent of this state shall prevent, attempt to prevent, or advise such person against the communication, visit, or consultation" with an attorney. R.C. 2935.20.[2] Likewise, any "person arrest[ed

---

[2] Violations of R.C. 2935.20 or 2935.14 result in a financial penalty for the officer or state agent and are not grounds for suppressing evidence. *See State v. Griffith,* 74 Ohio St.3d 554, 555, 660 N.E.2d 710 (1996). Nevertheless, these statutes may inform our analysis.

who] is unable to offer sufficient bail or, if the offense charged be a felony, he shall, prior to being confined or removed from the county of arrest, as the case may be, be speedily permitted facilities to communicate with an attorney at law." R.C. 2935.14. That statute specifically prohibits confinement or removal of that person "until such attorney has had reasonable opportunity to confer with him privately, or other person to arrange bail."

{¶40} These policy choices are consistent with the guarantee that a defendant " 'need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.' " *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, 21 N.E.3d 1033, ¶ 13, quoting *Wade*, 388 U.S. at 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Counsel is needed at any stage requiring "legal advice-giving or truth-testing function that only a lawyer can perform." *State v. Childs*, 14 Ohio St.2d 56, 59, 236 N.E.2d 545 (1968). And counsel is necessary where the defendant has a "right to rely on counsel as a 'medium' between him and the State." *State v. Fite*, 9th Dist. Summit No. 25318, 2011-Ohio-2500, ¶ 15, quoting *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). Counsel is necessary at these critical pretrial stages because "depriv[ing] a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Moulton* at 170.

{¶41} For more than a century, the right to counsel in Ohio has meant the right to effective counsel. Absent effective counsel, a defendant is deprived of a fair trial and substantial justice. *Cornwell v. State*, 106 Ohio St. 626, 628, 140 N.E. 363 (1922); *see State v. Cutcher,* 17 Ohio App.2d 107, 115, 244 N.E.2d 767 (8th Dist.1969); *see also State v. Hester*, 45 Ohio St.2d 71, 80, 341 N.E.2d 304 (1976). Following these state constitutional decisions, the United States Supreme Court recognized that the Sixth

16

Amendment right to counsel "is the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). And the right to counsel "is indispensable to the fair administration of our adversary system of criminal justice." *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

### 7. *Counsel's Obligations*

**{¶42}** For Morris's counsel to provide effective assistance, she must fulfill certain duties to ensure that Morris receives a fair trial. *Strickland* at 689. She must pursue her client's defense with "reasonable diligence and promptness." Prof.Cond.R. 1.3. In doing so, she must "consult with [her] client as to the means by which" her client's objectives are pursued. Prof.Cond.R. 1.2. She must establish reasonable communication with her client. Prof.Cond.R. 1.4(a). She must "explain a matter to the extent *reasonably* necessary to permit the client to make informed decisions." Prof.Cond.R. 1.4(b). She must "conduct a reasonable pre-trial investigation sufficient to develop appropriate defense strategies." *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 54 (2d Dist.) (collecting cases).

**{¶43}** These obligations reflect the crucial role that attorneys play in presenting a defense and ensuring a fair trial. Attorneys "act as a spokes[person] for, or advisor to, the accused." *United States v. Ash*, 413 U.S. 300, 312, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973). Their presence " 'protect[s] the unaided layman at critical confrontations' with his 'expert adversary,' the government, *after* 'the adverse positions of government and defendants have solidified' with respect to a particular alleged crime." (Emphasis in *McNeil*.) *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), quoting *United States v. Gouveia*, 467 U.S. 180, 189, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). This is why, "once adversary proceedings have

17

commenced against an individual, he has a right to legal representation when the government interrogates him." *Brewer*, 430 U.S. at 401, 97 S.Ct. 1232, 51 L.Ed.2d 424. Therefore, the right precludes "governmental conduct [that] has rendered counsel's assistance to the defendant ineffective." *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (collecting cases).

### 8. *Jackson Reflects Ohio Law*

**{¶44}** To promote the protections guaranteed by the right to counsel, *Jackson* crafted a bright line rule–after "the right to counsel attaches and is invoked, any statements obtained from the accused during subsequent police-initiated custodial questioning regarding the charge at issue (even if the accused purports to waive his rights) are inadmissible." *McNeil v. Wisconsin*, 501 U.S. 171, 179, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), citing *Jackson*, 475 U.S. at 625, 106 S.Ct. 1404, 89 L.Ed.2d 631.

**{¶45}** When *Montejo* overruled *Jackson*, it rejected the notion that all state agents, rather than just attorneys, must respect the attorney-client relationship once a defendant has secured an attorney. *Montejo*, 556 U.S. at 783, 129 S.Ct. 2079, 173 L.Ed.2d 955. But in Ohio, a lawyer "shall not communicate about the subject of representation with a person the lawyer knows to be represented." Prof.Cond.R. 4.2. Ohio also imputes professional obligations onto certain nonlawyer government agents. Prof.Cond.R. 5.3(c)(2). Further, all state agents, not merely state attorneys, are prohibited from interfering with a defendant's ability to consult or communicate with his attorney. *See* R.C. 2935.20 and 2935.14. As such, the attachment of the right to counsel triggers a series of obligations applicable to most state agents.

**{¶46}** *Montejo* also rejected the view that *Jackson* is necessary to safeguard the right to rely on the assistance of counsel. *Montejo* at 787. Instead, it tethered *Jackson* to a right to be free from police pressure, or in the court's words, an

"antibadgering rationale." *Id.* Assessing what it described as *Jackson*'s prophylactic rule, the court weighed the benefit of eliminating badgering-induced confessions against the "truth-seeking process and the criminal justice system." *Id.* at 793, quoting *Moran,* 475 U.S. at 426, 106 S.Ct. 1135, 89 L.Ed.2d 410. The Court concluded that *Jackson* prevented few, if any, badgering-induced confessions from being admitted at trial. *Id.* Thus, according to *Montejo, Jackson* was unnecessary because Fifth Amendment safeguards already protected a defendant's Sixth Amendment rights. *Id.*

{¶47} But in Ohio, *Jackson's* bright-line rule safeguards more than a defendant's right to be free from police pressure. One of the primary purposes of excluding evidence to remedy a constitutional violation is to " ' "deter future unlawful police conduct." ' " *State ex rel. Wright v. Ohio Adult Parole Auth.,* 75 Ohio St.3d 82, 89, 661 N.E.2d 728 (1996), quoting *United States v. Janis*, 428 U.S. 433, 446, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), quoting *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). When the Ohio Supreme Court held that the Ohio Constitution requires the suppression of "physical evidence seized as a result of [a suspect's] unwarned statements," it reasoned:

> We believe that to hold otherwise would encourage law-enforcement officers to withhold *Miranda* warnings and would thus weaken Section 10, Article I of the Ohio Constitution. In cases like this one, where possession is the basis for the crime and physical evidence is the keystone of the case, warning suspects of their rights can hinder the gathering of evidence. When physical evidence is central to a conviction and testimonial evidence is not, there can arise a virtual incentive to flout *Miranda.* We believe that the overall administration of justice in

19

Ohio requires a law-enforcement environment in which evidence is gathered in conjunction with *Miranda*, not in defiance of it.

*State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, ¶ 49.

**{¶48}** Evidence gathering equally incentivizes disregard of a defendant's right to counsel. But the right to counsel "includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right." *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). To this end, the *Jackson* rule encourages adherence to Ohio law and respect for the right to counsel. *See* R.C. 2935.20; *see also* R.C. 2935.14.

**{¶49}** *Jackson's* bright-line rule is consistent with Ohio's policies protecting the attorney-client relationship and discouraging unlawful police conduct.

### 9. *Kentucky, West Virginia, and Kansas Reject Montejo*

**{¶50}** In *Keysor v. Commonwealth*, 486 S.W.3d 273 (Ky.2016), the Kentucky Supreme Court rejected *Montejo* and found a broader right to counsel under its state constitution. Discussing *Montejo's* cost-benefit analysis, *Keysor* recognized additional purposes for the *Jackson* rule. The rule ensures that the defendant's waiver of the right to counsel is valid and reinforces the attorney-client relationship. *Keysor* at 279-280. The *Keysor* court noted,

> by discounting the social value of the attorney-client relationship in a cost-benefit analysis, [*Montejo*] completely disregarded the unavoidable deterioration of the right to counsel that results when prosecuting authorities are permitted to send police interrogators to conduct custodial interviews with accused persons about the pending charges without the knowledge of their attorneys.

*Id.* at 280.

{¶51} Plus, *Keysor* reasoned, *Montejo* ignored the fact that the " 'substantial costs' " are "by design," and "[c]onstitutional protections were put in place by the framers of the state and federal constitutions to hinder oppressive impulses by retarding the government's ability to incarcerate suspected offenders." *Id.* Likewise, the Ohio Supreme Court has recognized that maintaining the "plain and valuable right vested in everyone accused of a crime" * * * "should not be weakened, invaded or destroyed" except for the best of reasons. *State v. Wing*, 66 Ohio St. 407, 425, 64 N.E. 514 (1902).

{¶52} Kentucky is not the only state to hold that *Montejo* is contrary to the right to counsel under state law. *See State v. Bevel,* 231 W.Va. 346, 745 S.E.2d 237 (W.Va.2013); *see also State v. Lawson,* 296 Kan. 1084, 297 P.3d 1164 (Kan.2013) (finding that *Jackson's* protections comport with state statutory protections for the right to counsel).

{¶53} Thus, in Kentucky, Kansas, and West Virginia, "if police initiate interrogation after a defendant asserts his right to counsel at an arraignment or similar proceeding, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid as being taken in violation of the defendant's right to counsel." *Bevel* at 356; *Keysor* at 282.

### 11. *The Ohio Constitution Affords a Broader Right to Counsel*

{¶54} Considering Ohio's longstanding history of strongly protecting an accused's right to counsel, Ohio's jurisprudence finding more robust rights for criminal defendants under the Ohio Constitution than the United States Constitution, and state agencies' obligations under the Ohio Revised Code and the Rules of Professional Conduct, we hold that *Montejo's* reasoning does not align with the nature of the right to counsel in Ohio. As a result, we hold that Article I, Section 10 of the Ohio

Constitution provides greater protection of a criminal defendant's right to counsel than the Sixth Amendment to the United States Constitution.

**{¶55}** We follow the bright-line rule announced in *Jackson,* that when an accused's right to counsel has attached and an attorney has been secured, any uncounseled waiver of the defendant's right to counsel in a state-initiated interrogation is deemed invalid. *See Jackson*, 475 U.S. at 636, 106 S.Ct. 1404, 89 L.Ed.2d 631.

### III. Conclusion

**{¶56}** We note that the state's fourth issue for review disputes whether Morris requested an attorney around the 45-minute mark of the interrogation. Because we affirm the suppression of Morris's statements throughout the entire interrogation, we decline to address this argument.

**{¶57}** We overrule the state's assignment of error and affirm the trial court's suppression of all statements made during the interrogation.

Judgment affirmed.

**CROUSE, P.J.,** concurs separately.
**WINKLER, J.,** dissents.

**CROUSE, P.J.,** concurring separately.

**{¶58}** I wholeheartedly concur in the foregoing opinion, but I write separately to encourage litigants to continue to develop constitutional arguments under the Ohio Constitution. Typically, the Ohio Constitution is mentioned only in passing, and constitutional arguments are made under the federal Constitution and in lock-step with United States Supreme Court decisions. *See, e.g., State v. Searight*, 1st Dist. Hamilton No. C-230060, 2023-Ohio-3584, ¶ 12 ("However, because he fails to explain how or why Section 10 [of the Ohio Constitution] would provide due process

protections beyond those afforded to him by the federal Due Process Clause or by Ohio's Due Course of Law Clause, we decline to ponder these questions."); *State v. Thompson*, 1st Dist. Hamilton No. C-200388, 2021-Ohio-3184, ¶ 14, fn. 1 ("In his reply brief, Mr. Thompson makes a passing argument regarding the Ohio Constitution. It is too late in the day to advance that argument on reply, and thus we have no occasion to explore any potential distinctions between the inquiry under the Ohio and federal Constitutions.").

{¶59} To my knowledge, this is one of the very few times a separate argument under the Ohio Constitution has been developed and decided below and argued in this court. Notably, the state did not address the Ohio constitutional issues when it was invited to do so by the trial court, and it continued to argue to this court that we must follow United States Supreme Court precedent when interpreting our state Constitution.

{¶60} In his book, *51 Imperfect Solutions, States and the Making of American Constitutional Law*, Judge Jeffrey Sutton cautions against a lock-step approach to interpretating a state constitutional counterpart to the federal Constitution. He wrote:

> Why borrow in particular from the larger, far larger, jurisdiction? Federalism considerations may lead the U.S. Supreme Court to underenforce (or at least not to overenforce) constitutional guarantees in view of the number of people affected and the range of jurisdictions implicated. No state supreme court by contrast has any reason to apply a "federalism discount" to its decisions, making it odd for state courts to lean so heavily on the meaning of the Federal Constitution in construing their own.

23

Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law*, 175 (2018).

{¶61} In the case of a criminal defendant's right to counsel, the Supreme Court in *Montejo* certainly underenforced the right to counsel guarantee when it chose to overrule *Jackson*. In noting that there was not a uniform rule among the states for the appointment of counsel, the Court stated, "Nothing in our *Jackson* opinion indicates whether we were then aware that not all States require that a defendant affirmatively request counsel before one is appointed; and of course we had no occasion there to decide how the rule we announced would apply to these other States." *Montejo*, 556 U.S. at 787, 129 S.Ct. 2079, 173 L.Ed.2d 955. In fact, the *Montejo* majority recognized that its holding may not apply to individual state constitutional rights when it declared, "If a State wishes to abstain from requesting interviews with represented defendants when counsel is not present, it obviously may continue to do so." (Emphasis deleted.) *Montejo* at 793.

{¶62} It makes sense that when considering a right of such importance as a criminal defendant's right to counsel, the United States Supreme Court would be concerned about enunciating a single national rule to be applicable to 50 states that have different rules, systems, and traditions. Thus, when the United States Supreme Court mentions leaving certain issues to the states, litigants should listen.

{¶63} Litigants should also listen to the numerous invitations that the Ohio Supreme Court itself has extended for the development of state constitutional arguments. In his article "A Tipping Point in Ohio: The Primacy Model as a Path to a Consistent Application of Judicial Federalism," Judge Pierre Bergeron observed:

> The Ohio Supreme Court has recently suggested an openness to some
>
> state constitutional claims—especially in the equal protection context.

Justice Fischer's assertions that the Ohio Supreme Court should "reexamine the Ohio and federal Equal Protection Clauses" and that "[p]arties should not presume that rights afforded to a person under the United States Constitution . . . are the same rights as those afforded to a person under the Ohio Constitution" are practically a flashing neon sign, saying: "Lawyers, bring your state equal protection claims here!" And it's not just Justice Fischer. Where the parties fail to properly raise an issue under the Ohio Constitution, it has become commonplace for the Ohio Supreme Court to explicitly "leave[] open the question whether the Ohio Constitution might offer greater rights and protections to our citizenry under these circumstances." Language of this nature may hint that the Ohio Supreme Court is interested in re-evaluating the protections provided by the Ohio Constitution and, perhaps, interpreting them with independent force. It is time for practitioners to respond to these hints and advance theories under state constitutional principles. Since courts generally do not address issues that the parties did not raise, courts need practitioners to develop these arguments in order to force courts to explore the protections provided by the state constitution.

Pierre H. Bergeron, *A Tipping Point in Ohio: The Primacy Model as a Path to a Consistent Application of Judicial Federalism*, 90 U.Cin.L.Rev. 1061, 1082-1083 (2022) (string citing numerous Ohio Supreme Court cases inviting arguments under the Ohio Constitution); *see also State v. Brunson*, Slip Opinion No. 2022-Ohio-4299, ¶ 67 ("And because Brunson has failed to develop his argument under the Ohio Constitution, we focus our analysis on whether the trial court violated Brunson's Fifth

Amendment right to remain silent."); *State v. Jackson*, Slip Opinion No. 2022-Ohio-4365, ¶ 11 ("In the text of his propositions of law, Jackson also refers to Article I, Section 14 of the Ohio Constitution, which provides an independent protection against 'unreasonable searches and seizures.' In the proceedings below, however, Jackson did not argue that the Ohio Constitution provides him any greater protection than the Fourth Amendment. And Jackson has not presented any such argument to this court. Indeed, Jackson has not developed any argument under the Ohio Constitution. As a consequence, we are constrained to evaluate Jackson's claim under only the Fourth Amendment.").

{¶64} The *Montejo* decision has been relentlessly criticized by legal scholars since its release. In the article "*Montejo* and The New Judicial Federalism," Professor Laurent Sacharoff wrote:

> [T]he [*Montejo*] Court blurred the lines between [the Fifth and Sixth Amendment] right to counsel, at least when it comes to police interrogation. It essentially applied the weaker Fifth Amendment right to counsel protections to the Sixth Amendment right, eroding what had previously been an important distinction between the two rights. Numerous scholars and judges have criticized *Montejo*. The decision affords too little protection for criminal defendants, they argue, and it ignores the basic premises of the adversarial system.

Laurent Sacharoff, Montejo *and The New Judicial Federalism*, 50 Tex.Tech L.Rev. 599, 599-600 (2018); *see also* Eda Katharine Tinto, *Wavering on Waiver:* Montejo v. Louisiana *and the Sixth Amendment Right to Counsel*, 48 Am.Crim.L.Rev. 1335, 1369-1370 (2011) ("The Court erroneously focused on principles underlying Fifth Amendment jurisprudence and ignored the fundamental Sixth Amendment notions of

the importance of the assistance of counsel and fairness in the adversarial process."); Geoffrey M. Sweeney, *If You Want It, You Had Better Ask for It: How* Montejo v. Louisiana *Permits Law Enforcement to Sidestep the Sixth Amendment*, 55 Loy.L.Rev. 619, 643 (2009) ("The Court failed to elucidate how these two distinct rights vary, if at all, in such a circumstance. As a result, the Sixth Amendment's guarantee of counsel's participation at all critical stages is stripped of both force and function."); Emily Bretz, *Don't Answer the Door:* Montejo v. Louisiana *Relaxes Police Restrictions for Questioning Non-Custodial Defendants*, 109 Mich.L.Rev. 221, 230 (2010) ("The rationale behind the Sixth Amendment, that which drove the *Jackson* rule and was disregarded in *Montejo*, is to protect the integrity of the attorney-client relationship throughout all pretrial critical stages when the state might take advantage of the accused or where the defendant requires advice on how best to confront his adversary."); Michael C. Mims, *A Trap for the Unwary: The Sixth Amendment Right to Counsel After* Montejo v. Louisiana, 71 La.L.Rev. 345, 369 (2010) ("The most unsettling element of the Court's ruling in *Montejo* is its complete disregard for the traditional rationale behind the Sixth Amendment."); *Keysor v. Commonwealth*, 486 S.W.3d 273, 281 (Ky.2016) ("While we respect the Supreme Court's authority for the interpretation of federal law, we cannot tether the Kentucky Constitution to the Supreme Court's evolving standards of Sixth Amendment protections.").

**{¶65}** Thus, I applaud Morris for raising this extremely important issue of a criminal defendant's right to counsel under Article I, Section 10 of the Ohio Constitution. And I hope to see litigants continue to develop their constitutional arguments under our state Constitution. "Lawyers and courts, working together, can restore the independent force of the Ohio Constitution that our founders intended." Bergeron, 90 U.Cin.L.Rev. at 1087.

**WINKLER, J.,** dissenting.

**{¶66}** A court's analysis of similar provisions in the Ohio Constitution and the United States Constitution "should not be driven simply by disagreement with the result reached by the federal courts' interpretation." *Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 76. I respectfully dissent because I believe that the trial court did just that.

**{¶67}** Article I, Section 10 "is comparable to but independent of similar guarantees provided by the Sixth Amendment to the United States Constitution." *Milligan*, 40 Ohio St.3d 341, 533 N.E.2d 724, at paragraph one of the syllabus. As the Ohio Supreme Court instructs, "[w]e must be cautious and conservative when we are asked to expand constitutional rights under the Ohio Constitution, particularly when the provision in the Ohio Constitution is akin to a provision in the U.S. Constitution that has been reasonably interpreted by the [United States] Supreme Court." *Gardner* at ¶ 76, citing *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 28-29 (O'Connor, J., dissenting) (where the language used by the federal and Ohio Constitutions is "virtually identical," it is "illogical" to suggest that the provisions should be interpreted differently). When the language of the Ohio and United States Constitutions are coextensive, there should be "compelling reasons why Ohio constitutional law should differ from the federal law." *Wogenstahl*, 75 Ohio St.3d at 363, 662 N.E.2d 311.

**{¶68}** The United States Constitution, as interpreted by *Montejo*, clearly permits the questioning here. The majority finds a compelling reason to disagree with the United States Supreme Court based in the history of the right, reflected in

28

jurisprudence, sections of the Ohio Revised Code and the Rules of Professional Conduct.

{¶69} I find it hard to reconcile the view that Article I, Section 10 has a history and tradition of being more expansive than the Sixth Amendment with the actual text of the two provisions. Article I, Section 10 of the Ohio Constitution provides, in relevant part, "[i]n *any trial in any court*, the party accused shall be allowed to appear and defend in person and with counsel." (Emphasis added.) The Sixth Amendment provides, in relevant part, "[i]n *all criminal prosecutions*, the accused shall enjoy the right to * * * have the [a]ssistance of [c]ounsel for his defense." (Emphasis added.) In my view, the words of the Sixth Amendment are broader, applying to "all criminal prosecutions" while Article 1, Section 10 requires not only a "trial" but a "trial in any court." This difference in the Ohio Constitution is particularly notable because the inaugural Ohio Constitution of 1802 used the phrase "in all criminal prosecutions" found in the federal Constitution. Article VIII, Section 11, Ohio Constitution (1802). This change to narrower language cuts against the view that Article 1, Section 10 is supposedly broader.

{¶70} The references to the statutory right-to-counsel in R.C. 2935.20 are misplaced. This case concerns only Morris's constitutional right to counsel. Morris chose to raise the constitutional grounds to ask the court to invoke the Exclusionary Rule as a desired remedy. This is because Morris's statutory rights would not result in the suppression of his statements. *State v. Griffith*, 74 Ohio St.3d 554, 555, 660 N.E.2d 710 (1996). At most, R.C. 2935.20 would see Detective Glecker fined $25 to $100 and imprisoned for not more than 30 days, and Morris's statements admitted as evidence. Insofar as R.C. 2935.20 informs our reading of Article 1, Section 10, the presence of

additional statutory protections implies that the General Assembly thought the available constitutional rights, and their applicable remedies, were narrow, not broad.

**{¶71}** Ohio's Rules of Professional Conduct would suggest applying *Montejo*, not rejecting it. The United States Supreme Court rejected in *Montejo* a similar invocation of the American Bar Association's Model Rules of Professional Conduct ("Model Rules") as a basis to uphold the rule in *Jackson* advanced today. *Montejo*, 556 U.S. at 790, 129 S.Ct. 2079, 173 L.Ed.2d 955. In the same way the Sixth Amendment does not codify the Model Rules, Ohio's Constitution does not codify the Rules of Professional Conduct, nor does it make investigating officers into lawyers. Model Rule 4.2, rejected as inapplicable in *Montejo*, and Ohio's Prof.Cond.R. 4.2 are identical. Prof.Cond.R. 4.2, Commentary ("Rule 4.2 is identical to Model Rule 4.2"). Model Rule 5.3(c)(2) and Ohio's Prof.Cond.R. 5.3(c)(2) are also similar. Prof.Cond.R. 5.3, Commentary ("Rule 5.3 is similar to the Model Rule"). While Ohio's rule expressly covers lawyers in government agencies and the Model Rule only covers "law firms," the Model Rules make clear that "law firms" include government legal departments. Model Rule 1, Comment 3 ("With respect to the law department of an organization, including the government, there is ordinarily no question that the members of the department constitute a firm within the meaning of the Rules of Professional Conduct."). Thus, both rules impute a prosecutor's professional obligations onto her nonlawyer government agents, so long as she has managerial or direct supervisory authority over the agent. *Compare* Prof.Cond.R. 5.3(c)(2) *with* Model Rule 5.3(c)(2).

**{¶72}** Because the two rules are the same, *Montejo*'s criticism of relying on Model Rule 4.2 applies here: the rule in *Jackson* advanced here is both narrower and broader than Ohio's Rules of Professional Conduct. *Jackson* is broader because Article

1, Section 10 would apply to all government agents, while Ohio's Rules of Professional Conduct encompass lawyers and the government agents under the managerial or direct supervisory authority of a lawyer. The rule in *Jackson* is also narrower because if a represented party initiates contact with government agents, they may both talk freely, whereas a prosecutor could be sanctioned for interviewing a represented party even if that party initiates the communication and consents to the interview. Prof.Cond. R. 4.2, Comment 3. Ohio's use of similar language is not a compelling reason to reach a contrary outcome to *Montejo*.

{**¶73**}  Accordingly, I would apply the United States Supreme Court's reasoned opinion in *Montejo* interpreting the Sixth Amendment right to counsel to the coextensive right to counsel in Article 1, Section 10 as written. To me, there is no compelling reason to dispense with the United States Supreme Court's interpretation except disagreement with the result. Consequently, I would have this court address the argument that Morris did not unambiguously invoke his right to counsel. But because the majority declines to address this argument, I will also decline to address it here.

{**¶74**}  I respectfully dissent.

Please note:

The court has recorded its entry on the date of the release of this opinion.